**Edward Blake CHAPPELL, as Next Friend of Robin Chappell, a Minor, Appellant,**

v.

**Dr. Edward DWYER et al., Appellees.**

**No. 7027.**

Court of Civil Appeals of Texas, El Paso.

Jan. 14, 1981.

Rehearing Denied Feb. 11, 1981.

Howell, Fields, Thompson & Fields, Jeffrey B. Thompson, El Paso, for appellant.

Dudley & Dudley, William C. Dudley, Michael W. Hartley, El Paso, Mark White, Atty. Gen. of Texas, John W. Fainter, Jr., 1st Asst. Atty. Gen., Richard E. Gray, III, Ted L. Hartley, Executive Asst. Attys. Gen., Paul R. Gavia, Chief Asst. Atty. Gen., State and County Affairs, Jack Sparks, Asst. Atty. Gen., Austin, for appellees.

OPINION

OSBORN, Justice.

The Appellant, Robin Chappell, obtained a favorable jury verdict for injuries she received in a one vehicle accident in which she was a passenger. Being dissatisfied with the amount of the verdict, she presents this appeal. We affirm.

Just prior to the accident on February 20, 1977, Dr. Edward Dwyer was driving a Chevrolet Blazer on a dirt road at the Hueco Tanks State Historical Park east of El Paso. Miss Chappell, age fifteen, was a passenger in the back seat. Five other young people were also in the vehicle. As they approached what appeared to be a road off to the right, Dr. Dwyer asked if he should turn right and received an affirmative response. There was an arroyo parallel to the road upon which Dr. Dwyer was driving, and large brush alongside the road blocked the view of the arroyo. At a break in the brush, Dr. Dwyer turned right thinking the other road intersected with the one he was traveling on. In fact, the roads did not intersect and the front end of the Blazer suddenly dropped into the arroyo, and Robin was thrown forward in the vehicle.

She and the others were taken by ambulance to a hospital emergency room where her cuts were sutured, x-rays made and after examination by a physician, she was released to go home. The next day, she went to an orthopedic surgeon and has remained under his care since that time. She was out of school about three weeks after the accident and then returned to class, and subsequently graduated from high school and is now a part-time student at the El Paso Community College. She worked one summer at a movie theater but had difficulty with the job and was fired. Later, she worked eight months at Montgomery Ward on a part-time job while attending school. She has never been hospitalized, and gave no history of receiving any physical therapy, but she has continued to see her treating doctor every few months and still has complaints of neck pains and headaches. She lost a tooth in the accident, and her physician said she has stiffness of her neck and some loss of the normal lordotic curve. Her dentist testified concerning a bridge he made to replace the lost tooth. He said it may require replacing about three times during her lifetime. He could not estimate the cost of such work. An economist testified as to lost wages if Miss Chappell is not able to work full time after she graduates from college.

The jury found that the negligence of Dr. Dwyer and the Texas Parks and Wildlife Department proximately caused the accident, and attributed 70% of the fault to the Parks Department and 30% to Dr. Dwyer. It awarded Miss Chappell $8,000.00 for past pain and mental anguish and awarded "0" for future pain and mental anguish, "0" for future loss of earning capacity, "0" for future medical expenses and "0" for future dental expenses. The jury failed to find the Department had "actual notice" that Robin Chappell received some injuries on

*February 20, 1977. It did find the Depart-ment* "had knowledge of the absence of barriers where the Blazer turned into the arroyo."

The first four points of error complain that the jury's answers which failed to award any sum for future damages are against the great weight and preponder-ance of the evidence. Under such points, we are required to review the entire record and have done so. There is testimony that in April, 1977 the treating doctor found the patient had a full range of motion and was no longer having headaches. He testified x-rays taken in March, 1978 showed normal alignment of the cervical vertebrae. He said a neurosurgeon to whom he referred Miss Chappell found nothing wrong with her. Dr. Dwyer was of the opinion that she should have fully recovered from the cervi-cal strain within a period of six months.

Certainly, there was conflicting evidence which indicated Miss Chappell had not fully recovered, and that she has a chronic cervi-cal strain and that the straightening of the curvature of the cervical spine continues.

■ In *Blackmon v. Piggly Wiggly Cor-poration*, 485 S.W.2d 381 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.), the Court noted the rules by which a jury may decide such cases and said:

They may disbelieve a witness though he is neither impeached nor contradicted. *Cheatham v. Riddle*, 12 Tex. 112. They may believe one witness and disbelieve others. *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561. They may resolve conflicts and inconsist-encies in the testimony of any one wit-ness as well as the testimony of different witnesses. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792. They are not re-quired to depend on the evidence from a single source: *Texas & N. O. Ry. Co. v. New*, Tex.Civ.App., Er.Dis., 95 S.W.2d 170. They may accept or reject in whole or in part opinion testimony of physicians. They may accept lay testimony over that of experts. Opinion testimony does not establish material facts as a matter of law. *Hood v. Texas Indemnity Ins. Co.*,

141 Tex. 522, 209 S.W.2d 345. And they may disbelieve an interested witness even if uncontradicted. *Cochran v. Wool Growers Central Storage Co.*, 140 Tex. 184, 166 S.W.2d 904.

This Court noted and followed those same basic rules in *Comstock v. Ramirez*, 520 S.W.2d 475 (Tex.Civ.App.—El Paso 1975, no writ). The jury in this case believed Miss Chappell had sustained an injury for which she was awarded a sum for past pain and suffering. They apparently did not find that from a preponderance of the evidence she would be disabled in the future, and apparently were unconvinced that she had not made a full recovery at the time of trial. That was their prerogative and we cannot say that their failure to find future damages was against the great weight of the evidence, and we may not substitute our findings for those made by the jury. *Broussard v. Moon*, 431 S.W.2d 534 (Tex. 1978); *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). Points of error one through four are overruled.

The next point asserts error because of jury misconduct which denied Appellant her right to have ten jurors agree on the an-swer to each special issue. Four jurors testified at the motion for new trial hear-ing. There is some testimony that the jury generally agreed on the total damages to be awarded and then awarded that amount for past pain and suffering. All of the jurors agreed that each element of damages was considered. Mrs. Ray specifically said the jury agreed to award $8,000.00 for past damages and nothing for the other ele-ments considered. Oscar Estrada said that the jury concluded that no money should be awarded for future damages. All of the jurors who testified agreed that ten of the jurors agreed to the verdict returned to the Court.

■ We conclude there was no error in the jury's deliberations and the trial Court did not err in overruling the motion for new trial. As this Court noted in *Barnett v. Parker & Parker, Inc.*, 371 S.W.2d 406 (Tex. Civ.App.—El Paso 1963, no writ), the com-

plaining party must establish (1) that the misconduct did in fact occur and (2) that injury probably resulted to her. As noted in 5 Tex.Jur.3d *Appellate Review*, sec. 644: "In the absence of findings of fact, an appellate court will presume that the trial court made findings necessary to support its order overruling a motion for new trial based on jury misconduct. The appellate court will also presume, in the absence of findings and where the evidence is conflicting, that the trial court found as a matter of fact that misconduct did not occur, or that it was not material, or that it did not reasonably appear that probable injury resulted to the complaining party [footnotes omitted]." Such presumed or implied findings on an issue of jury misconduct where they are made from conflicting evidence are binding on an appellate court. *Maryland Casualty Company v. Hearks*, 144 Tex. 317, 190 S.W.2d 62 (1945); *Producers Chemical Company v. McKay*, 348 S.W.2d 91 (Tex. Civ.App.—Amarillo 1961) aff'd 366 S.W.2d 220 (1963). Point of error number five is overruled.

The last point asserts jury misconduct because the jury received evidence from its foreman concerning the necessity for replacement of Appellant's dental prosthesis which contradicted the evidence at trial. Dr. Dennison said the bridge which he made to replace the front tooth Miss Chappell lost in the accident would need replacing three times during her lifetime. At the hearing upon the motion for new trial, the foreman, a dental supply salesman, testified he made a remark during the jury's deliberations that the dental appliance should not have to be replaced more than once. The giving of such evidence outside the record was error. But we conclude it was not harmful under Rule 434, Tex.R.Civ.P. When Dr. Dennison was asked the reasonable cost for dental expense in the future, he said:

I sat here and tried to figure out what inflation would do to the cost of a bridge, and I came up with a dead end. If you take 12 to 18 percent a year and start adding it on to the price of a bridge today, it might cost a $100.00, it might cost $3,000.00 down the road. And I really can't say what it is going to cost because you are talking 10, 15 years away, and then another 10 or 15 years from that, and I don't know how to estimate that.

Without proof as to the reasonable cost of replacing the bridge, the number of times it might need to be replaced becomes harmless. Point of error number six is overruled.

The Texas Parks and Wildlife Department presents a cross-point of error in which it asserts the trial Court erred in not entering a take nothing judgment in favor of the State. It is contended that the arroyo is a premise defect and that under the Texas Tort Claims Act, Article 6252–19 et seq., Tex.Rev.Civ.Stat.Ann., the only duty owed to Appellant was one owed to a licensee, which is not to injure her by willful or wanton conduct or gross negligence. We believe the arroyo was a special defect of which the State had knowledge and for which liability may exist under the holding in *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex.1978). If the condition was a premise defect, and the only duty owed was that owed to a licensee, an exception to the general rule is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976). The evidence established that barriers had been erected to prevent vehicles from turning at the point where this accident occurred, but they had been removed and never replaced.

But, we cannot consider the cross-point because the issue has not been preserved for appeal by the State taking the necessary exception to the judgment entered against it, and it did not perfect an appeal so as to be an appellant. *Rutherford v. Holmes*, 599 S.W.2d 668 (Tex.Civ.App.— Austin 1980, no writ); *Dietz v. Dietz*, 540 S.W.2d 418 (Tex.Civ.App.—El Paso 1976, no writ). The State's cross-point is overruled.

The judgment of the trial Court is affirmed.